## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| RACHAEL CLAIRSSE D., | Case No.: 1:20-cv-00251-REP |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent. | |

Pending is Petitioner Rachael Clairsse D.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of her applications for Title II and Title XVI benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On June 11, 2017, Petitioner protectively filed applications for Title II and Title XVI benefits, alleging disability beginning May 23, 2017. This application was originally denied on July 6, 2017, and again on reconsideration on August 2, 2017. On September 7, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On April 3, 2019, ALJ Christopher R. Inama held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Barbara Harper, appeared and testified. Sara Statz, an impartial vocational expert ("VE"), also appeared and testified at the same hearing.

On May 22, 2019, the ALJ issued a decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council.  On May 4, 2020, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner filed this case.  She raises three points of error: (i) the ALJ erred in his evaluation of the medical opinions, (ii) the ALJ erred when he dismissed her statements as inconsistent with the record, and (iii) the ALJ erred when he determined a residual functional capacity which was not supported by substantial evidence or congruent with Social Security rulings.  Pet.'s Brief, at 5-19 (Dkt. 16).  Petitioner requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits or remand the case for further proceedings and award attorneys' fees.  *Id*. at 20-21.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42 U.S.C. § 405(g).  If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

**MEMORANDUM DECISION AND ORDER - 2**

ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

**MEMORANDUM DECISION AND ORDER - 3**

or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the

claimant has engaged in SGA, disability benefits are denied regardless of her medical condition,

age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has

not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that

Petitioner has not engaged in SGA since May 23, 2017 (the alleged onset date).  AR 15.

The second step requires the ALJ to determine whether the claimant has a medically

determinable impairment, or combination of impairments, that is severe and meets the duration

requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's physical or mental ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it

does not significantly limit the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable

impairment or combination of impairments, disability benefits are denied.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner's multiple sclerosis constitutes

a severe medically determinable impairment.  AR 16.

The third step requires the ALJ to determine the medical severity of any impairments,

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ

concluded that Petitioner's above-listed medically determinable impairment, while severe, does

**MEMORANDUM DECISION AND ORDER - 4**

not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  AR 16.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with additional limitations.  She can perform work that is done from a seated or standing position, with the ability to sit for 2 hours at a time and for 6 hours in an 8-hour workday; stand for 10 minutes at a time and for 1 hour in an 8-hour workday; and walk for 10 minutes at a time and for 1 hour in an 8-hour workday.  She does not require the use of an assistive device to ambulate.  She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.  She has no manipulative limitations.  She must avoid all exposure to hazards, such as unprotected heights and dangerous machinery.  She cannot perform fast-paced production requirements (defined as "constant activity, with tasks performed sequentially, in rapid succession.").

AR 16.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do

**MEMORANDUM DECISION AND ORDER - 5**

other work and meets the duration requirement, she is disabled.  Here, the ALJ found that as of

the date of his decision, Petitioner was not capable of performing her past relevant work, but that

she was currently capable of working full-time as a routing clerk, ticket seller, and furniture

rental consultant.  AR 21-22.  Based on these findings, the ALJ concluded that Petitioner was not

disabled.  AR 22-23.

**B.      Analysis**

        1.     <u>The ALJ Properly Considered the Medical Opinion Evidence</u>

In evaluating Petitioner's multiple sclerosis and its limiting impacts, the ALJ considered

medical source opinions from James Whiteside, M.D.; Justin Smith, M.D.; Ralph Heckard,

M.D.; Myung Song, D.O.; Barry Cusack, M.D.; Dave Sanford, Ph.D.; and Michael Dennis,

Ph.D.  AR 19-21.  Petitioner does not challenge the ALJ's evaluation of all six opinions; instead,

she specifically argues the ALJ (i) improperly evaluated Dr. Whiteside's opinions, (ii) failed to

include manipulative limitations in the RFC to account for Dr. Heckard's opinion, and (iii) failed

to recontact Drs. Song and Cusack.  Pet.'s Brief at 6-13 (Dkt. 16).  Each claim is taken up below.

        *a.*     *The Standard for Evaluating Medical Opinions*

On January 18, 2017, the Social Security Administration published comprehensive

revisions to its regulations governing the evaluation of medical evidence.  *See* 82 Fed. Reg.

5844.  These amendments apply to claims, such as Petitioner's, filed on or after March 27, 2017.

*See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give

deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32

F.4th 785, 792 (9th Cir. 2022).

The lynchpin of this new standard is "persuasiveness."  *Id*.  When determining what

medical opinions to credit, an ALJ evaluates how persuasive each medical opinion is by

considering the following factors: (i) supportability, (ii) consistency, (iii) relationship with the

**MEMORANDUM DECISION AND ORDER - 6**

claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors are considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).  The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be."  20 C.F.R. § 404.1520c(c)(2).

The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. §§ 404.1520c(b)(2)-(3).

The Court reviews the ALJ's persuasiveness determination under these regulations using the substantial evidence standard.  *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").[1]

---

[1]  Petitioner originally maintained that ALJs must continue to provide "specific and legitimate" reasons for discounting the contradicted opinions of medical providers.  Pet.'s Brief at 6-7 (Dkt. 16).  The Ninth Circuit recently rejected this position (after briefing in this case was complete).  *Woods*, 32 F.4th at 792 (holding that "specific and legitimate" standard stemming from special weight given to treating or examining doctor's opinion is "incompatible" and "clearly irreconcilable" with revised social security regulations).

**MEMORANDUM DECISION AND ORDER - 7**

b.     Dr. Whiteside

Dr. Whiteside, Petitioner's treating neurologist, provided two medical "assessments" relating to Petitioner's ability to do work-related activities.  The first assessment, dated September 7, 2017,[2] indicated that Petitioner (i) can stand/walk for only 1 hour in an 8-hour workday because of "leg weakness and gait difficulty due to [multiple sclerosis]"; (ii) can sit for 8 hours in an 8-hour workday; (iii) can lift/carry only 10 pounds occasionally and 2 pounds frequently because "walking is not stable due to left leg weakness"; (iv) can never climb, balance, stoop, crouch, kneel, or crawl because of "[multiple sclerosis] – left leg weakness"; (v) does not suffer from fatigue, dizziness, or nausea; and (vi) can manage benefits in her own best interest.  AR 374-76.  According to Dr. Whiteside (likely based on Petitioner's self-reports), these conditions have existed for the past seven years and are the "most severe since late May 2013."  AR 376.

The second assessment, dated March 28, 2019, similarly found that Petitioner's multiple sclerosis (i) generally affected her ability to stand/walk and lift/carry, but with no attempt to quantify these limitations (using "hours" or "pounds" metrics) like before;[3] and (ii) did not affect her ability to sit.  AR 652-53.  Moreover, this time, Dr. Whiteside did not comment at all on Petitioner's postural limitations,[4] summarily noting instead that she has "[multiple sclerosis]-

---

[2]  The assessment is actually dated "September 7, *2016*" but is likely in error.

[3]  To both points, Dr. Whiteside stated that Petitioner "has difficulty stepping with her left leg due to [multiple sclerosis] and feels off balance," and "due to her imbalance and difficulties with her left leg, carrying items could lead to falls."  AR 652-53.

[4]  The second assessment likewise does not comment on any manipulative limitations (reaching, handling, feeling, pushing/pulling) or environmental restrictions.  Those sections are left completely blank.  AR 654.  Oddly, these same categories were not even included within the earlier September 7, 2017 assessment; to be sure, it appears that the page with those categories of information (page three of four) is not included in the record.  AR 375-76 (with numbered paragraphs proceeding from IV to VII).

**MEMORANDUM DECISION AND ORDER - 8**

associated fatigue, neuropathic pain, and gait difficulties that would make it very difficult for her to maintain employment." AR 653, 655.

The ALJ found these opinions "not persuasive" and instead credited the opinions of other medical providers and agency doctors in finding that Petitioner was not precluded from engaging in a range of light work. AR 20-21. The ALJ provided the following reasons for doing so: (i) Petitioner had only seen Dr. Whiteside two times leading up to his September 7, 2017 opinion, "suggest[ing] that [Petitioner's] condition is not as severe as alleged"; (ii) the opinions are not consistent with the overall medical evidence of record; (iii) the opinions were inconsistent with Dr. Whiteside's own examinations and medical records; (iv) the March 28, 2019 opinion did not indicate the level of limitations that Petitioner would be expected to experience with respect to sitting, standing, and walking; and (v) the check-box-nature of the opinions are themselves not credible when not supported by a more complete narrative, objective medical evidence, or the treatment record. *Id*. Certain of these reasons appropriately focused on the supportability and consistency of Dr. Whitehead's opinions, as required by 20 C.F.R. § 404.1520c(b)(2), and are likewise supported by substantial evidence.[5]

---

[5] In contrast, the ALJ's reliance on the frequency of Petitioner's visits with Dr. Whitehead leading up to his September 7, 2017 assessment and how both assessments employed check-the-box forms is misplaced. First, recognizing that Petitioner established care with Dr. Whiteside on June 8, 2017 (*see supra*), it is misleading to suggest that Petitioner "only" saw Dr. Whiteside twice "that year." *See* Pet.'s Reply at 4 (Dkt. 22) ("[T]he timeframe of Petitioner's first visit to Dr. Whiteside's first opinion encompassed only four months. Two visits seeking specialist care within seven weeks followed by an opinion shortly thereafter cannot constitute a legitimate reason to disregard a specialist treating physician's opinion."). Second, a medical opinion cannot be rejected merely for being expressed within a check-the-box-questionnaire. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). That said, because an ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of the conclusions, any critique in this respect rises and falls with Dr. Whiteside's actually-provided narratives, contrasted against the balance of the medical record. *Id*. Setting aside these possible shortcomings, the ALJ nonetheless provided other reasons to question Dr. Whiteside's opinions. *See infra*.

**MEMORANDUM DECISION AND ORDER - 9**

First, the gist of Dr. Whiteside's opinions – particularly as they progressed from September 7, 2017 to March 28, 2019 – is that Petitioner's condition supports a multiple sclerosis diagnosis.  AR 374-76, 652-55.  But this is undisputed.  At step two of the sequential process, the ALJ found that Petitioner suffers from multiple sclerosis and that such an impairment is severe insofar as it limits her ability to work.  AR 16.  And at step four (the RFC analysis), the ALJ specifically accounted for Petitioner's multiple sclerosis and corresponding functional limitations.  AR 16; *see also infra* (discussing Dr. Heckard's opinions pertaining to Petitioner's reaching and manipulative limitations).  Therefore, where Petitioner's arguments vis à vis Dr. Whiteside's opinions depend upon medical records that highlight the existence of certain limitations or symptoms, they miss the point.  Pet.'s Brief at 8-12 (Dkt. 16).   The ALJ already acknowledged as much and provided limitations in the RFC to accommodate Petitioner's symptoms.  Crucially, the issue is not whether Petitioner has multiple sclerosis (she does) or whether its related limitations exist (they do), but the extent to which they prevent her from doing any work whatsoever.  On *this* essential point, the ALJ properly questioned Dr. Whiteside's opinions.

Indeed, the ALJ emphasized how the medical record mostly included evidence related to a May 23, 2017 multiple sclerosis flare-up (an "exacerbation" that coincided with her alleged onset date), with subsequent treatments and medications that significantly improved her condition.  AR 17.  This longitudinal medical history supports a multiple sclerosis diagnosis, yet reveals mostly static, unremarkable findings on physical examinations (at times observed by Dr. Whiteside himself (*see infra*)).  These findings included full motor strength of the right extremities and only slightly reduced motor strength on the left side; normal range of motion; normal muscle tone; enhanced gait; and overall improvements in time when medication-compliant.  AR 18-20 (citing AR 378, 401, 408, 415-16, 421-22, 442, 451-53, 459, 504, 519-20,

**MEMORANDUM DECISION AND ORDER - 10**

529, 607).  At bottom, the medical record following the May 2017 flare-up did not substantiate

the more extreme limitations included in Dr. Whiteside's assessments.  *See Burrell v. Colvin*,

775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that

are conclusory, brief, and unsupported by the record as a whole or by objective medical

findings.").

   An October 2018 physical and neurological examination by Ralph Heckard, M.D.,

confirms this.  AR 534-44.  There, Dr. Heckard acknowledged how Petitioner's multiple

sclerosis impacted her left lower extremity, but that she had (i) "very mild" proximal weakness

of the left lower extremity; (ii) intact ranges of motions and strengths; (iii) no deficits or

alterations of motor, sensory, or reflex functions of the upper or lower extremities; (iv) no

measured muscular asymmetry or atrophy (other than a left thigh circumference measuring 3

centimeters smaller than the right thigh circumference); and (v) could handle objects with both

gross and fine manual motor dexterity.  AR 536, 539, 543-44.  The ALJ found Dr. Heckard's

opinions in these respects persuasive because they more squarely aligned with the overall

medical record.  AR 20.  In turn, the ALJ adopted these "mostly mild findings" into the

corresponding light level exertion RFC determination.  AR 16-21.

   Second, as the ALJ noted, the limitations reflected in Dr. Whiteside's assessments did not

track his own examination notes.  AR 20.  Those notes confirm the existence of Petitioner's

understood multiple sclerosis symptomology.  They do not, however, document objective

debilitating problems with her musculoskeletal or neurological systems that would prevent her

from working.  This underscores the disconnect between Dr. Whiteside's treatment notes and his

two assessments.  Like the medical record as a whole (*see supra*), Dr. Whiteside's examination

notes consistently noted Petitioner's left lower extremity limitations, *alongside* normal strength,

reflexes, and range of motion – with her condition "clearly improv[ing]" over time.  AR 451,

**MEMORANDUM DECISION AND ORDER - 11**

511-12, 518-20, 527-29, 552-54, 579-81.  They also reference "giveaway weakness" and "poor effort" during motor examinations.  AR 528, 553, 580.[6]  In this setting, the assessments' restrictive limitations stand alone and cannot be verified elsewhere.  As a result, they are of limited utility to understanding Petitioner's true ability to work.  *Houghton v. Comm'r of Soc. Sec. Admin.*, 493 Fed. App'x. 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctors'] own treatment records or clinical findings, [and] inconsistent with the record as a whole").

Third, Dr. Whiteside's second assessment essentially concluded that Petitioner was disabled and unable to work, without any discussion of Petitioner's actual limitations or the degree to which those limitations might impact her ability to work.  AR 20 (ALJ stating: "the opinion did not indicate the level of limitations that the claimant would be expected to experience with respect to sitting, standing, and walking.")  Those sections of the assessment form are not filled out at all.  AR 652-55.  An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).  Dr. Whiteside's second assessment therefore amounts to a conclusory vocational opinion that fails to set forth specific functional assessments critical to a disability determination.

In sum, it is clear that Petitioner's multiple sclerosis is severe and impacts her ability to work.  However, the ALJ's reasons for discounting Dr. Whiteside's opinions for lack of supportability and consistency are supported by substantial evidence.  Petitioner believes that the

---

[6] Giveaway weakness occurs when a patient suddenly stops exerting force during a muscle resistance test and is in contradistinction to true weakness where there is smooth decrease in resistance with increasing force.  *Kampster v. Astrue*, 2012 WL 4210630, at *4 (D. Idaho 2012) (citing American Academy of Neurology, "The Neurological Examination").  Evidence of giveaway during testing may be evidence of malingering or evidence of poor effort.  *Aguinaga v. Astrue*, 2014 WL 28822, at *9, n.5 (D. Idaho 2014).

ALJ did not give those opinions the weight they deserved, but the ALJ considered such opinions against the surrounding medical record, namely conflicting medical opinions, testimony, and accounts.  The ALJ decided that Dr. Whiteside's opinions were relatively less supportable and consistent.  Hence, because the evidence can reasonably support the ALJ's conclusions in this respect, the Court will not substitute its judgment for that of the ALJ's – even if the Court were to have a different view.  *Richardson*, 402 U.S. at 401.   Accordingly, the ALJ's evaluation of Dr. Whiteside's opinions is supported by substantial evidence.

        *c.*      *Dr. Heckard*

As part of his October 2018 examination, Dr. Heckard opined that Petitioner could only "occasionally" reach, handle, finger, and feel due to "[multiple sclerosis] fatigue limits."  AR 536.  And while the ALJ found Dr. Heckard's opinion persuasive (AR 20), he did not incorporate these specific restrictions into Petitioner's RFC, stating instead that "[s]he has no manipulative limitations."  AR 16.  Petitioner argues that the ALJ's failure to provide *any* reason, let alone an appropriate reason, for rejecting Dr. Heckard's opinions on these points constitutes error.  Pet.'s Brief, at 11-12 (Dkt. 16).

Even if the ALJ erred in failing to include these manipulative limitations in Petitioner's RFC, the error is harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (district court may not reverse ALJ's decision on account of error that is harmless).  At step five of the sequential process, the ALJ found that Petitioner could work full-time as a furniture rental consultant.  AR 21.  That job does not require manipulative capabilities exceeding those identified by Dr. Heckard (and Petitioner does not contend otherwise).  *See* DOT 295.357-018, *available at* 1991 WL 672589.  In other words, even if the ALJ had fully credited Dr. Heckard's opinions regarding Petitioner's manipulative limitations, Petitioner still would have been able to work as a furniture rental consultant and the ALJ's ultimate non-disability determination would

remain unchanged.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error at step four harmless due to alternative findings at step five, and thus error was inconsequential to non-disability determination).  Any oversight in not doing so is therefore harmless.

          *d.*       *Drs. Song and Cusack*

On July 3, 2017, state agency consultant Dr. Song opined that Petitioner's condition will improve and not result in significant limitations in her ability to perform basic work activities.  AR 82.  Relevant here, Dr. Song expected that, 12 months after Petitioner's onset date, she should be able to stand and/or walk for 6 hours in an 8-hour workday.  AR 79.  On August 2, 2017, state agency consultant Dr. Cusack agreed that Petitioner's RFC "projected to light work."  AR 104.  The ALJ found these opinions persuasive because "[t]he physical limitations set forth in the findings were consistent with the record as a whole including the objective medical evidence and observable signs documented in the overall medical record."  AR 21.

Petitioner argues that the ALJ failed to reconcile Drs. Song and Cusack's stand/walk limitations with Dr. Heckard's more restrictive stand/walk limitations (AR 535), particularly when the ALJ found all three opinions persuasive.  Pet.'s Brief at 12 (Dkt. 16) ("The ALJ provided no explanation how three opinions, which were contradictory, provided a basis for his RFC.").  The Court disagrees.

To start, the new regulations do not require the level of nuanced reconciliation that Petitioner seeks.  An ALJ may address multiple opinions from a single medical source in one analysis.  20 C.F.R. § 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).  This approach accords with the Ninth Circuit's long-standing recognition that an ALJ is not required to "draft dissertations when denying benefits."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  The touchstone for whether an ALJ has sufficiently explained his decision is not whether the ALJ conducted a line-by-line dissection of

**MEMORANDUM DECISION AND ORDER - 14**

every medical opinion or piece of testimony offered by a claimant, but whether the reviewing court can reasonably follow the ALJ's reasoning and provide meaningful judicial review. *Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal citations omitted). Here, the ALJ appropriately considered the supportability and consistency of the three doctors' largely similar opinions insofar as they supported an RFC that allowed for light work. This was a rational conclusion which must be affirmed on appeal.

Moreover, the ALJ found Dr. Heckard's *more restrictive* limitations the most persuasive and adopted an RFC more in line with his opinion. Practically speaking, then, even if the ALJ erred in failing to distinguish the restrictions offered by Drs. Heckard, Song, and Cusack, the error was harmless because none of their stand/walk limitations foreclosed light duty work. *Molina*, 674 F.3d at 1115.

Reversal is not warranted on any combination of these issues.

2.    The ALJ Did Not Err in Questioning Petitioner's Subjective Symptom Testimony

Petitioner next argues that the ALJ erred because the reasons for rejecting her testimony were not clear and convincing, and not supported by substantial evidence in the record. Pet.'s Brief at 13-17 (Dkt. 16). Petitioner takes issue primarily with the ALJ's finding that Petitioner's claimed limitations were inconsistent with the record. *Id*. at 14-17.

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other

**MEMORANDUM DECISION AND ORDER - 15**

symptoms alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

1991)).  Second, if such objective medical evidence exists, and the ALJ has not determined that

the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting

the claimant's testimony regarding the severity of the claimant's symptoms.  *Id*.

        Generalized findings will not satisfy this standard.  The reasons an ALJ provides for

rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing

court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and

did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter v. Colvin*, 806

F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  This requires that the ALJ

"identify what testimony is not credible and what evidence undermines the claimant's

complaints."  *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722).  If there is such substantial evidence,

courts will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

2002).  Even when the evidence can support either outcome, a court may not substitute its

judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

        Here, Petitioner alleges an inability to perform work-related activity due to her multiple

sclerosis.  Her June 18, 2017 and August 1, 2017 function reports confirm this, stating in relevant

part:

- Can't drive due to conditions – mobility, focus, fatigue, and pain.  Unable to sit or stand for long periods of time.  Lack of stability due to depression.

- Experience weakness, fatigue, pain/tingling in legs, blurred vision.

- Can't work so can't pay bills or have a savings account.

- Can't focus so reading/writing is difficult – pain and fatigue limit all others to a minimum or not at all.

- Can't lift, bend, walk – get exhausted fast.  Slurred speech, memory issues, comprehension.  Find myself less able to tolerate others as well as before.

**MEMORANDUM DECISION AND ORDER - 16**

- Can only walk 10-15 feet before needing to stop and rest.

- My disease prevents me from performing any physical ability such as lifting, pushing, bending, sitting, or standing for long periods of time as well as being able to focus on day to day tasks required for any job.

- [T]he medication I am taking increases more symptoms in which I am unable to function as I normally would (prior to diagnosis) in any work force.

- I wake up in the morning, take my first dosage of medication.  About 30 minutes in, I undergo severe side effects such as nausea, allergic prickling and reddening of skin, lack of coordination, major fatigue, as well as major dehydration lasting up to 2-3 hours.  After this passes, I get about 2 hours of just poor coordination and try to move around before my evening dosage of medication which entails the same if not worse effects.

- My [sleeping] is random.  I am usually awake late at night not being able to sleep or am in discomfort physically that keeps me from sleep.

- I can do laundry but cannot pick up heavy items or stand for long periods of time.

- I can't do things without some assistance involved.

- My body is usually always fatigued or undergoing symptoms that prevent me [from doing house or yard work].

- I can't walk around very long without feeling weak and fatigued.

- My illness has caused me to step away from working so I have not been able to make money.  My doctor has also stated that due to my illness my ability to work again is unknown.

- I like reading if my short time between symptoms hitting me allow me to focus. Watch TV.

- I have a lack of focus or ability to perform anything for a long amount of time.

- I don't feel comfortable being around a lot of people and also do not partake in majority of activities.

- I can only lift 25 pounds.  Anything physical can last only about 20 minutes. My speech becomes slurred a lot of the time.  My memory can be quickly forgotten if I've done something, I have trouble focusing without getting confused a lot, and my emotions, way of thinking, can be random.

**MEMORANDUM DECISION AND ORDER - 17**

- Can walk half a block before needing to stop and rest for 15 minutes at least.

AR 284, 287-89, 323-28, 330.  Petitioner's testimony at the April 3, 2019 hearing largely parallels these claims.  AR 38-50.

The ALJ found that, while Petitioner's multiple sclerosis could reasonably be expected to cause the symptoms alleged, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  AR 18.  The ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's symptom testimony.

First, the ALJ concluded that certain of Petitioner's daily activities are "somewhat inconsistent" with her above-referenced allegations of *totally*-disabling limitations.  AR 17.  The ALJ observed that Petitioner is able to: (i) perform chores around the house (laundry, light vacuuming, and sweeping); (ii) write, watch television, meditate, read, play computer games, walk, and hike everyday (when conditions allow); and (iii) lift 25 pounds.  *Id*. (citing AR 286, 288, 325, 328).  These activities indicate better functioning than Petitioner claims and constitute valid reasons to reject the extent of her complaints.  *Ahearn v. Saul*, 988 F.3d 111, 1117 (9th Cir. 2021) (finding that claimant's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time . . ., to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" was inconsistent with allegations of disabling limitations); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").[7]

---

[7] Petitioner properly attempts to add context to these activities.  Pet.'s Brief at 14-15 (Dkt. 16).  The traction in such arguments explains why the ALJ only found them to be

**MEMORANDUM DECISION AND ORDER - 18**

Second, the ALJ concluded that Petitioner's claims did not neatly align with the medical record. AR 17 ("Despite her allegations, the medical evidence of record indicated improvements with treatment, with mostly mild multiple sclerosis symptoms."). Whereas Petitioner reports that her multiple sclerosis is altogether debilitating, her medical records do not paint the picture of near total inactivity due to disabling limitations. *See supra* (discussing findings on physical examinations). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Third, the ALJ noted the references in the record to Petitioner's giveaway weakness and poor effort on physical tests. AR 18-19 (citing AR 528, 553, 580). Giveaway weakness is a sign of symptom magnification and calls into question the credibility of Petitioner's complaints. *Thebo v. Astrue*, 436 Fed. Appx. 774, 775-76 (9th Cir. 2011) (it was proper for ALJ to consider examining doctor's finding that claimant's "weakness was 'give away' in nature" in determining claimant's testimony regarding his limitations was not credible).

Together, the record contains clear and convincing explanations as to why the ALJ found Petitioner's testimony not entirely credible. While Petitioner identified conflicting evidence that

---

"somewhat inconsistent." AR 17. To be clear, these activities standing alone to not establish whether Petitioner can work full-time; but this does not mean that they are irrelevant or inappropriate for the ALJ to consider when evaluating Petitioner's credibility. *See Molina*, 674 F.3d at 1113 ("Even where [a claimant's reported] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment."). Still, any overstatement in these respects is harmless because the ALJ provided other clear and convincing reasons to discredit Petitioner's testimony. *Batson*, 359 F.3d at 1197 (ALJ's overall credibility decision may be upheld even if not all of ALJ's reasons for rejecting claimant's testimony are upheld).

supports her position, it is not the Court's role to weigh such evidence, draw inferences, or resolve credibility. Rather, the Court's measuring stick is simply whether the ALJ supported his decision to doubt Petitioner's credibility and deny disability benefits with clear and convincing reasons. He did. Accordingly, as required by controlling law, the ALJ will not be second-guessed as to such conclusions on the record here against the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Reversal is not warranted on this issue.

3.   <u>The ALJ Properly Determined That Petitioner's Stand/Walk Limitations Are Consistent With Light Work</u>

Petitioner lastly argues that the stand/walk limitations referenced within her RFC are inconsistent with light work – specifically, she contends that standing and walking 2 hours (combined) in an 8-hour workday is more in line with sedentary work, not light work, and that the ALJ failed to resolve that conflict as required. Pet.'s Brief at 17-19 (Dkt. 16). Petitioner's argument is not persuasive.

"To determine the physical exertion requirements of work in the national economy," the Social Security Administration and the Dictionary of Occupational Titles ("DOT") classify all jobs as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Relevant here, sedentary work requires occasional walking and standing, while light work requires "a good deal of walking or standing, or when it involves sitting most of the time . . . some pushing and pulling of arm or leg controls." *Id*. In 1983, the Social Security Administration issued a ruling elaborating on these definitions. The ruling states that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday,

**MEMORANDUM DECISION AND ORDER - 20**

and sitting should generally total approximately 6 hours of an 8-hour workday."  Social Security

Ruling ("SSR") 83-10, 1993 WL 31251, at *5 (January 1, 1983).  By comparison, "the full range

of light work requires standing or walking, off and on, for a total of approximately 6 hours of an

8-hour workday."  *Id*. at *6.

Petitioner points to the discrepancy in stand/walk limitations between light and sedentary

work, contrasted against the same limitation provided in her RFC, as evidence of the ALJ's error

at step five of the sequential process.  But there is nothing obviously suspect or erroneous about

it.  The Social Security Regulations do not require that a claimant be able to perform the full

range of work within any one exertional category, each of which includes multiple occupations

representing numerous jobs in the national economy.  SSR 83-12, 1983 WL 31253 (January 1,

1983).  Where, as here, the panoply of a limitations places a claimant between exertional

categories, the regulations advise the ALJ to use a VE to determine the impact the reduced

exertional capacity has on the occupational base.  *Id*. at *2.  The ALJ followed this prescription.

At the April 3, 2019 hearing, the ALJ called the VE to assist him in determining what

jobs were available to someone with Petitioner's limitations.  The VE testified that a person, like

Petitioner, who could only stand and walk 2 hours in an 8-hour workday, would not be

disqualified from certain light and sedentary jobs.  AR 51-53.  The VE acknowledged that these

standing/walking variables were "not addressed by the DOT or SCO [(Selected Characteristics of

Occupations)]" before nonetheless explaining that her related testimony is based on her

"professional experience including research, job analysis, job placement, and employer

interviews."   AR 53; *see also* AR 22 (ALJ reiterating that VE "indicated that [her] testimony

regarding sit/stand options, reduced function of standing and walking, and pace of production

were based on her professional experience in the field as a vocational expert.").  Petitioner has

not shown that it was unreasonable for the ALJ to credit this testimony.

**MEMORANDUM DECISION AND ORDER - 21**

While the DOT raises a presumption as to job classification requirements, this presumption is rebuttable.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may rely on VE testimony that conflicts with the DOT so long as there is "persuasive" testimony to support the deviation.  *Id*.  This is not a demanding standard.  "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."  SSR 00-4p, 2000 WL 1989704, at *2 (December 4, 2000).  Instead, it is the responsibility of the ALJ to resolve the conflict by asking the expert to explain the variance and then determining "whether the [VE's] explanation for the conflict is reasonable."  *Zavalin*, 778 F.3d at 846.  As explained above, assuming that the VE's testimony actually conflicts with the DOT, the VE provided a reasonable explanation for this conflict: namely, the lack of particularized information in the DOT compared to the VE's own experience and research.  AR 53.  This is enough.  *Buckner-Larkin v. Astrue*, 450 F.App'x 626, 628 (9th Cir. 2011) (accepting VE's testimony, based on "labor market surveys, experience, and research," that certain sedentary jobs allow for an at-will sit/stand option); *Avilez v. Berryhill*, 677 F.App'x 373, 374 (9th Cir. 2017) (affirming ALJ's reliance VE testimony based on "twenty years of experience, knowledge of characteristics, and requirements of jobs in the local area.").  Requiring more would subvert the substantial evidence standard.  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.")

The fact that a VE's description of a particular job "does not align perfectly with the DOT's listed occupation titles" does not automatically cast doubt on the VE's opinion.  *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009).  Not all jobs require the exactitude reflected in the DOT and nothing in between.  As is the case here, when determining what jobs fall within arguably overlapping occupations, it is reasonable for the ALJ to rely on the professional expertise of a VE.

**MEMORANDUM DECISION AND ORDER - 22**

Reversal is not warranted on this issue.

## IV.  **CONCLUSION**

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based upon proper legal standards and supported by substantial evidence.  The Commissioner's decision is affirmed and Petitioner's Petition for Review is denied.

## V.  **ORDER**

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED and the decision of the Commissioner is AFFIRMED.

DATED:  September 2, 2022

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge